UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

CASE NO.

NPA ASSOCIATES, LLC and
MISCHA HILL ASSOCIATES, LLC,

Plaintiffs,

v.

LAKESIDE PORTFOLIO
MANAGEMENT, LLC, WESTON
PORTFOLIO GROUP, LLC,
BRIAN O. PLUNKETT, and
EUGENE WETZOLD,

Defendants.
_______________________________/

# COMPLAINT

Plaintiffs sue Defendants and state:

## JURISDICTIONAL ALLEGATIONS

1. This is an action for money damages in excess of $75,000.00 and injunctive relief brought under the diversity jurisdiction of this Court pursuant to 28 U.S.C. §1332.

2. Venue is proper in this forum as the Defendants reside in the Southern District of Florida.

3. At all times material, Plaintiff, NPA ASSOCIATES, LLC ("NPA"), was a foreign limited liability company, duly registered, with its principal place of business in Connecticut.

4. At all times material, Plaintiff, MISCHA HILL ASSOCIATES, LLC ("MHA"), was a foreign limited liability company, duly registered, with its principal place of business in Connecticut.

5. At all times material, Defendant, LAKESIDE PORTFOLIO MANAGEMENT, LLC

("LPM"), was a Delaware limited liability company, with its principal place of business in the Southern District of Florida. Despite this, LPM has failed to properly register with the Florida Secretary of State.

6. At all times material, Defendant, BRIAN PLUNKETT, was an adult resident of the Southern District of Florida and sui juris. PLUNKETT was the principal of LPM.

7. At all times material, Defendant, EUGENE WETZOLD, was an adult resident of the Southern District of Florida and sui juris. WETZOLD is a principal of WPG.

**COMMON FACTUAL ALLEGATIONS**

8. Plaintiffs owned certain pools of mortgage backed loans that Plaintiffs were seeking to sell. There were two distinct portfolios at issue.

9. In early 2013, Plaintiffs were introduced to PLUNKETT, who expressed an interest in purchasing the loan pools from Plaintiffs through his company, LPM.

10. PLUNKETT advised Plaintiffs that he would be doing the deal with the involvement and assistance of WPG and WETZOLD.

11. Negotiations ensued, and as part of their due diligence, LPM and WPG entered into appropriate Confidentiality Agreements with NPA. WPG signed its agreement on April 13, 2013; LPM signed its agreement on June 1, 2013. Said agreements are in the possession of Defendants and are not attached due to their confidential nature.

12. Under the terms of the Confidentiality Agreements, Defendants were prohibited from disclosing any information obtained as part of the negotiation process.

13. Subsequently, Defendants having completed their due diligence, LPM entered into contracts to buy the loan portfolios.

14. More specifically, on July 3, 2013, LPM entered into an Asset Sale Agreement with MISCHA to purchase one pool of assets at a price of One Million One Hundred Thousand Dollars, to close on or before July 6, 2013.

15. LPM also entered into a separate agreement with NPA to purchase the second pool of assets at a price of Nine Hundred Thousand Dollars, to close on or before July 5, 2013.

16. The Asset Sale Agreements are in the possession of Defendants and are not attached due to their confidential nature.

17. Unbeknownst to Plaintiffs, during the due diligence period Defendants were disclosing the confidential information to third parties in violation of the agreements. On information and belief, the Defendants were doing so in an attempt to "flip" the deal; that is, they were trying to market the deal for resale before ever taking title.

18. In doing so, Defendants placed thousands of mortgage debtors at risk due to the disclosure of their personal information (in the form of tens of thousands of names, addresses, and Social Security numbers); similarly, these actions could place Plaintiffs at potential risk for the unauthorized disclosures.

19. As the date of closing approached, PLUNKETT began making excuses and delaying matters.

20. Over the course of several weeks, PLUNKETT, both verbally and by way of email, repeatedly assured Plaintiffs that the deal would close shortly, and that he was just obtaining final funding. PLUNKETT even paid Plaintiffs a nominal amount to defer their delay costs.

21. All that while, however, on information and belief, PLUNKETT, in concert with the other Defendants, was continuing to disseminate the confidential, privileged and proprietary

information previously referenced in an attempt to accomplish the desired "flip."

22. PLUNKETT was unsuccessful; it became apparent shortly thereafter that LPM was not going to honor its obligations under the Asset Sale and Confidentiality Agreements.

**COUNT I – TRADE SECRETS – PLAINTIFFS v. ALL DEFENDANTS**

23. Plaintiffs reallege Paragraphs 1-22 and incorporate them herein.

24. The proprietary information shared with Defendants as part of the Confidentiality Agreements constitutes "trade secrets" as defined by Section 688.002, Fla. St. More specifically, the information at issue derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and was the subject of efforts that are reasonable under the circumstances to maintain its secrecy (the Agreements).

25. Plaintiffs are entitled to an order enjoining Defendants from any further dissemination or use of the aforementioned trade secrets, in accordance with Section 688.003, Fla. St.

26. As a result of the actions of Defendants in misappropriating and disseminating the aforementioned trade secrets, Plaintiffs have been damaged, as set forth above. As such, Plaintiffs are entitled to recover both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss. In lieu of damages measured by any other methods, the damages caused by misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret.

27. Furthermore, the actions of Defendants constitute willful and malicious misappropriation as contemplated by Section 688.004, Fla. St., entitling Plaintiffs to the imposition

of punitive damages.

**COUNT II – FDUTPA – PLAINTIFFS v. ALL DEFENDANTS**

28. Plaintiffs reallege Paragraphs 1-22 and incorporate them herein.

29. Plaintiffs are "consumers" as defined by Florida's Deceptive and Unfair Trade Practices Acts, Sections 501.201 *et seq.*

30. The transactions at issue in this matter, as described above, constituted "trade or commerce" as defined by Florida's Deceptive and Unfair Trade Practices Acts, Sections 501.201 *et seq.*

31. In committing the acts described above – that is, fraudulently engaging the Plaintiffs in the transactions specified with the intention of simply "flipping" them, intending all along to transmit proprietary information to third parties without permission and in violation of the Nondisclosure Agreements, Defendants committed unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.

32. As a direct and proximate result of Defendants' conduct as alleged, Plaintiffs have suffered damages.

33. The actions of Defendants have forced Plaintiffs to hire the undersigned attorneys and to pay them a reasonable fee, which Defendants are responsible for pursuant to Section 501.2105, Fla. St.

**COUNT III – BREACH OF CONTRACT – NPA v. LPM**

34. NPA realleges paragraphs 1-22 and incorporates them herein.

35. In failing to ultimately close on the agreed purchase, LPM breached the Agreement.

36. As a direct result of LPM's breach, NPA has suffered damages.

37. The actions of LPM have caused NPA to hire the undersigned attorneys and to pay them a reasonable fee, which NPA is entitled to recover.

**COUNT II – BREACH OF CONTRACT – MHA v. LPM**

38. MHA realleges paragraphs 1-22 and incorporates them herein.

39. In failing to ultimately close on the agreed purchase, LPM breached the Agreement.

40. As a direct result of LPM's breach, MHA has suffered damages.

41. The actions of LPM have caused MHA to hire the undersigned attorneys and to pay them a reasonable fee, which MHA is entitled to recover.

**COUNT III – BREACH OF NDA – NPA v. PLUNKETT**

42. NPA realleges paragraphs 1-22 and incorporates them herein.

43. In disclosing the proprietary information as described to unauthorized third parties, Plunkett, who was bound by the Non-Disclosure Agreement as principal of LPM, breached same.

44. As a direct result of Plunkett's breach, NPA has suffered damages.

45. The actions of Plunkett have caused NPA to hire the undersigned attorneys and to pay them a reasonable fee, which NPA is entitled to recover.

**COUNT IV – BREACH OF NDA – NPA v. WETZOLD**

46. NPA realleges paragraphs 1-22 and incorporates them herein.

47. In disclosing the proprietary information as described to unauthorized third parties, Wetzold, who was bound by the Non-Disclosure Agreement as principal of WPG, breached same.

48. As a direct result of Wetzold's breach, NPA has suffered damages.

49. The actions of Wetzold have caused NPA to hire the undersigned attorneys and to pay them a reasonable fee, which NPA is entitled to recover.

**COUNT V – BREACH OF NDA – LPM**

50. NPA realleges paragraphs 1-22 and incorporates them herein.

51. In disclosing the proprietary information as described to unauthorized third parties, LPM, through its agents, breached the Non-Disclosure Agreement same.

52. As a direct result of LPM's breach, NPA has suffered damages.

53. The actions of LPM have caused NPA to hire the undersigned attorneys and to pay them a reasonable fee, which NPA is entitled to recover.

**COUNT VI – BREACH OF NDA – WPG**

54. NPA realleges paragraphs 1-22 and incorporates them herein.

55. In disclosing the proprietary information as described to unauthorized third parties, WPG, through its agents, breached the Non-Disclosure Agreement same.

56. As a direct result of WPG's breach, NPA has suffered damages.

57. The actions of WPG have caused NPA to hire the undersigned attorneys and to pay them a reasonable fee, which NPA is entitled to recover.

**JURY TRIAL DEMANDED**

Plaintiffs demand trial by jury on all issues so triable.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory and exemplary damages, injunctive relief, prejudgment interest on liquidated damages, court costs, and reasonable attorneys' fees, along with all other relief the Court sees fit to grant, after trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED,

FEILER & LEACH, P.L.
Attorneys for Plaintiff
901 Ponce de Leon Blvd., Penthouse Suite
Coral Gables, FL 33134-3009
Tel. (305) 441-8818 Fax (305) 441-8081
mbf@flmlegal.com

By: /s/ Michael B. Feiler
Michael B. Feiler
Board Certified Civil Trial Lawyer
Fla. Bar No. 098477